IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GIOVANNI MUCCI,**<br>        *Plaintiff,*<br><br>    v.<br><br>**CORRECTION OFFICER TIMOTHY WATERS et al.,**<br>        *Defendants.* | Civil No. 23-2649 |

**MEMORANDUM**

**Costello, J.**                                                                                    September 3, 2025

      Plaintiff Giovanni Mucci is incarcerated at Phoenix State Correctional Institute ("SCI Phoenix"). Mucci claims that a correctional officer, Timothy Waters, punched him in the face and injured his mouth. Mucci has sued Waters to recover for his injuries. Mucci has also sued the former Superintendent of SCI Phoenix, Jaime Sorber,[1] based on a Section 1983 supervisory liability theory. Sorber now moves for summary judgment on Mucci's claim against him. For the reasons that follow, the Court will grant Sorber's motion for summary judgment.

**I.   FACTUAL BACKGROUND**

    **A.   DISPUTED FACTS & PROCEDURAL HISTORY**

      Mucci claims that SCI Phoenix placed him in the Restrictive Housing Unit on August 9, 2021 after he had a "verbal altercation" with a correctional officer. ECF No. 36 at 2-3 ¶¶ 1-2. SCI Phoenix determined that Mucci had threatened an employee or his family and had used inappropriate language. *See* ECF No. 35-2 at 2. However, Mucci "denies that he threatened" the

---

[1] Sorber's first name is spelled as "Jaime," "Jaimie," and "Jamie" in various filings. Because Sorber's deposition used "Jaime," the Court will use that spelling here. *See* ECF No. 36-2 at 41.

correctional officer. *See* ECF No. 36 at 3 ¶ 2; ECF No. 36-2 at 24 ¶ 3 ("I believe that I was wrongfully sent to the RHU in August of 2021 related to an incident involving" the correctional officer); *but see* ECF No. 36-2 at 5 (showing Mucci appears to testify that he told a correctional officer "[Y]ou don't know me. You don't know anything about me. You don't know who I am. I'll F you up"). After being transferred to the Restrictive Housing Unit, Mucci claims Waters brought him to the Unit's property room on August 17, 2021 to inventory his property. ECF No. 36 at 3 ¶ 5. While in the property room, Mucci asserts that Waters intentionally punched him in the face. *Id.* at 3 ¶ 6. Mucci claims that the punch "fracture[d] [his] teeth" and caused him to "bleed profusely." *Id.* at 3-4 ¶ 6. Waters denies that he punched Mucci. *Id.* at 4 ¶ 8.

Mucci has sued Waters under Section 1983 and state tort law and has sued Sorber under Section 1983 based on a supervisory liability theory.[2] *See* ECF No. 18. Sorber now moves for summary judgment on Mucci's Section 1983 claim against him. *See* ECF No. 35 at 4-5 & n.1 ("Because there is a clear dispute of fact as to the claims against Waters, only Sorber moves for summary judgment at this time."). The undisputed facts relevant to Mucci's supervisory liability claim against Sorber are below.

B.  **UNDISPUTED FACTS**

Before the alleged battery, SCI Phoenix placed Mucci in the Restrictive Housing Unit on August 9, 2021. *See* ECF No. 35-1 at 8; ECF No. 36-2 at 6. SCI Phoenix released Mucci from the Restrictive Housing Unit on approximately September 1, 2021. *See* ECF No. 35-1 at 32-33.

---

[2] Mucci also originally brought claims against his dental providers—Dr. Michael Bianco and Wellpath Holdings, Inc.—arising from the care he received following his injuries. *See* ECF No. 18 at ¶¶ 49-57. However, the parties stipulated to dismiss Mucci's claims against Wellpath Holdings, Inc. on October 3, 2023, and stipulated to dismiss Mucci's claims against Dr. Bianco on August 2, 2024. *See* ECF No. 24; ECF No. 25; ECF No. 34. Mucci also lists SCI Phoenix as a Defendant in his Complaint caption, but does not direct any claims against SCI Phoenix. *See* ECF No. 18.

After being released from the Restrictive Housing Unit, SCI Phoenix moved Mucci to "M Block," which is "a death row block . . . known as the grind up block." *See id.* at 34.

Even assuming Waters intentionally punched Mucci on August 17, 2021, the exhibits attached to each parties' briefs show that there is no dispute that Sorber only learned about the battery after it happened. *See* ECF No. 36-2 at 79-81 (showing Mucci claimed in a November 4, 2021 appeal to Sorber challenging his dental treatment that Waters had punched him in the face); ECF No. 35-1 at 29-30 (showing Mucci testified that he wrote to Sorber about the dental treatment appeal "when [he] was down in the hole, after the [punching] incident"). In earlier grievances also filed after the battery, Mucci had claimed that his injury was an accident. *See* ECF No. 35-1 at 14-16 (showing attorney presented Mucci with an undated, unidentified grievance where Mucci claimed that Waters "inadvertently turned while holding [his] guitar," which he was having inventoried after being moved to the Restrictive Housing Unit, and "hit [his] mouth with the neck of [his] guitar" and that it "was an accident");[3] *id.* at 33-34 (showing attorney presented Mucci with a September 15 grievance appeal where Mucci claims he was only injured because of the "negligence of . . . Waters"); *see also* ECF No. 36-2 at 81 (denying a grievance Mucci submitted regarding his dental treatment on November 1, 2021).

Although Travis Gordon, a Lieutenant at SCI Phoenix testified that he had "seen a lot of people get hit in the face" at the prison, and Patrick Judge, another Lieutenant, testified that there have been "countless incidents" of inmate injuries, neither Gordon nor Judge testified that Sorber knew about these incidents or that there was any reason that Sorber should have known about them before Mucci was injured. *See* ECF No. 36-2 at 37-38, 68, 70. Sorber retired from SCI

---

[3] Although Mucci claims that he only called his injury an accident because correctional officers told him to, Mucci has not produced evidence showing that Sorber was aware of these interactions. *See* ECF No. 35-1 at 15-16.

3

Phoenix in October 2022. *See id.* at 42-43. In his April 10, 2024 deposition, Mucci claimed that even though he is no longer being housed on M Block he is still "being housed on Q Block, which is the worst housing unit for level 4, level 5 inmates." *See* ECF No. 35-1 at 38.

### III.    LEGAL STANDARD

The Court should grant summary judgment if the moving party shows that "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party can establish that there is no genuine dispute of material fact by showing there is no evidence in the record to support an element of a claim on which the non-moving party "will bear the burden of proof [on] at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party may also satisfy its burden by showing the material facts are undisputed. *See Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 630-31 (3d Cir. 2024). In response, the non-moving party must identify "specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 256. The Court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion." *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

IV.   **DISCUSSION**

    A.   **Section 1983 Supervisory Liability**

Mucci's sole claim against Sorber is a Section 1983 supervisory liability claim. *See* ECF No. 18 ¶¶ 46-48; *see also* ECF No. 36 at 9 (arguing that Sorber is "Liable Under a Theory of Supervisory Liability" in opposition brief). Mucci asserts that Sorber failed to provide him with "safe living conditions free of unwarranted and unprovoked assault and battery" and because of his actions Mucci "suffered serious injuries to his mouth and teeth." *See* ECF No. 18 ¶¶ 47-48.[4] Essentially, Mucci is claiming Sorber should be liable for Waters's actions. *See id.*; ECF No. 36 at 9. However, a plaintiff cannot base a Section 1983 claim against a supervisor on a "respondeat superior basis." *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015)). Rather, a supervisor can only be liable for his subordinate's actions under Section 1983 under two circumstances: (1) where the supervisor participated in, directed, or had knowledge of and acquiesced in a subordinate's constitutional violation, or (2) where the supervisor had a policy, practice, or custom that caused the constitutional violation. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Sorber argues that Mucci has failed to produce evidence showing that Sorber can be liable as a supervisor. *See* ECF No. 35 at 7-8. The Court agrees.

---

[4] Mucci claims that Sorber violated the Fourteenth Amendment, which protects pre-trial detainees from unconstitutional conditions of confinement. *See, e.g.*, *Hill-Johnson v. DeAngelis*, Civ. Action No. 19-1277, 2019 WL 6001551, at *4 (W.D. Pa. Nov. 14, 2019). However, Mucci should have claimed that Sorber violated the Eighth Amendment, which protects those who have been convicted of and sentenced for a crime. *See id.* ("The Cruel and Unusual Punishments Clause applies only to a person who has been convicted of and sentenced for a crime, and it thus does not apply to pretrial detainees . . . Instead, it is under the Due Process Clause of the Fourteenth Amendment that pretrial detainees may bring claims regarding their treatment by corrections officials.").

1. **Participation, Direction, or Knowledge and Acquiescence**

A supervisor might be liable for his subordinate's actions under Section 1983 is if he "participated in violating plaintiff's rights, directed others to violate them, or, as the person[] in charge, had knowledge of and acquiesced in [his] subordinates' violations." *See Santiago*, 629 F.3d at 129 n.5 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). For example, a supervisor can have knowledge of ongoing constitutional violations committed against the plaintiff from reports of the violations. *See, e.g.*, *A.M.*, 372 F.3d at 586 (reversing summary judgment because the record showed supervisors had notice that plaintiff "was being assaulted by other residents" from "incident reports" their subordinates had prepared but still "took little or no action to protect [plaintiff]").

Here, Mucci has failed to produce any evidence showing that Sorber participated in battering Mucci or directed Waters to batter Mucci. *See* ECF No. 36; *see also* ECF No. 18 (pleading no facts regarding what Sorber knew or did regarding the battery). Mucci has also failed to produce evidence showing that Sorber knew that Waters was going to batter Mucci and acquiesced. Rather, the record evidence shows only that Sorber learned about the battery after it occurred. *See* ECF No. 36-2 at 79-81 (showing Mucci claims in a November 4, 2021 appeal to Sorber regarding his dental treatment that Waters intentionally punched him in the face); ECF No. 35-1 at 14-16 (discussing grievance where Mucci claimed his injury was an accident); ECF No. 35-1 at 33-34 (discussing grievance where Mucci claimed Waters was only negligent). Therefore, Mucci has failed to produce evidence showing that there is a genuine dispute of material fact regarding whether Sorber participated in, directed, or knew of and acquiesced in Waters's battery of Mucci.

### 2. Policy, Practice, or Custom

A supervisor can also be liable for his subordinate's actions if the supervisor "established and maintained a policy, practice or custom which directly caused [the] constitutional harm."[5] *See Santiago*, 629 F.3d at 129 n.5 (quoting *A.M.*, 372 F.3d at 586). To prove a supervisory liability claim under this theory, the plaintiff must "identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). For the second requirement, an "unreasonable risk" of the injury is typically shown through "evidence that such harm has in fact occurred on numerous occasions." *See Sample*, 885 F.2d at 1118. "Similarly, deliberate indifference[6] to a known risk" is typically shown through "evidence that the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries." *Id.*

---

[5] Failure to train claims and failure to implement adequate practices claims are "a subcategory of 'policy or practice' liability." *See Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (citing *Taylor v. Barkes*, 575 U.S. 822 (2015) (per curium)).

[6] Deliberate indifference means that the supervisor was "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *See Smith v. Kuzo*, Civ. Action No. 08-CV-1277, 2010 WL 4916075, at *8 (M.D. Pa. Sept. 7, 2010) (quoting *Beers-Capitol*, 256 F.3d at 125 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (noting the Court must "look[] to what the prison official actually knew rather than what a reasonable official in his position would have known" (quotation omitted)), *adopted by* Civ. Action No. 08-CV-1277, 2010 WL 4916069 (M.D. Pa. Nov. 24, 2010).

Therefore, the "easiest way" to establish "supervisory liability" under this theory "is by showing that 'the supervisory official failed to respond appropriately in the face of an awareness of'" a pattern of injuries. *See Beers-Capitol*, 256 F.3d at 134 (quoting *Sample*, 885 F.2d at 1118).[7] Where there is no evidence to "show a pattern of injuries" similar to the injuries plaintiff suffered or there is no "indication that [a supervisory defendant] was aware of any such" injuries, a plaintiff's supervisory liability claim will likely fail. *See Sample*, 885 F.2d at 1118; *see also Smith*, 2010 WL 4916075, at *4) (recommending summary judgment for warden where subordinate officers assaulted plaintiff because, although plaintiff attached three inmate affidavits claiming those officers had a pattern of abusing new inmates, the affidavits were not the "type of longstanding, pervasive, well-documented record of staff misconduct" that "would permit an inference that the warden had actual knowledge of staff misconduct"), *adopted by* Civ. Action No. 08-CV-1277, 2010 WL 4916069 (M.D. Pa. Nov. 24, 2010).

Here, even assuming that Sorber failed to have a specific policy or practice in place before Mucci was injured that created an unreasonable risk of constitutional injury, Mucci has not produced any evidence that Sorber knew about the risk and was deliberately indifferent to it such that he could be liable for Waters's actions. The evidence that Mucci cites to support his

---

[7] A plaintiff can also establish a supervisory liability claim by showing that "the risk of . . . harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of the unreasonable risk, and of indifference to it." *See Beers-Capitol*, 256 F.3d at 134 (quoting *Sample*, 885 F.2d at 1118). However, the Third Circuit has recently cast doubt on the single-incident theory in the municipal liability context. *See Hightower v. City of Phila.*, 130 F.4th 352, 357 (3d Cir. 2025) ("True, the Supreme Court has 'hypothesized' that 'in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference' . . . But it has never found this bar satisfied."). Mucci has not argued or produced evidence showing that the "risk to [him]" that Sorber's policies posed "was . . . 'so patently obvious'" that Sorber can be liable based on a single incident. *See Hightower*, 130 F.4th at 357.

policy or practice allegations focuses on actions that Sorber or other officers took *after* Waters punched him. *See* ECF No. 36 at 12-13 (only citing examples that occurred after Waters punched Mucci). For example, Mucci argues that Sorber's alleged failure to refer Mucci's November 4, 2021 grievance appeal—where Mucci claimed that Waters intentionally hit him—to the prison's "Security Office" for investigation shows that Sorber had a policy, practice, or custom of failing to enforce policies to protect inmates. *See id.* at 10-13 (claiming that Sorber failed to refer Mucci's complaint as evidence that Sorber "was willfully indifferent to inmate safety in his customary failure to enforce prison policies and rules that protected inmates" and that he "fail[ed] to train, discipline, and supervise his subordinates in material matters such as investigations and proper reportings [sic] of assaults on inmates"); *id.* at 56-57 (showing Sorber testified that he "can't recall" whether the Security Office investigated Mucci's claim, and Sorber's attorney states that he has "no information that an investigation occurred"). Mucci also claims Gordon and Judge failed to refer his complaint to the Security Office. *See* ECF No. 36 at 12. However, there is no evidence in the record that Mucci or his subordinates failed to investigate complaints or refer complaints to the Security Office, or that Sorber failed to discipline officers, *before* Mucci assaulted Waters. Therefore, even if Sorber, Gordon, and Judge did not refer Mucci's complaint to the Security Office, this does not establish that Sorber had a policy, practice, or custom of failing to enforce policies intended to protect inmates at the time Waters battered Mucci. *Cf. Beers-Capitol*, 256 F.3d at 134 (noting a supervisor can only be liable where his "policies or practices *led*" to a violation if the "*existing* policy or practice created an unreasonable risk of . . . injury" (emphasis added)).

    Mucci has not produced any evidence—such as grievances filed before Waters assaulted him—that show there was a pattern of correctional officers battering inmates or that Sorber knew

about a pattern. *Cf. White v. City of Vineland*, 500 F. Supp. 3d 295, 301, 308 (D.N.J. 2020) (denying summary judgment on supervisory liability claim where supervisor knew that there were seventeen previous excessive force claims filed against the subordinate officer). Even if Gordon's testimony that he has "seen a lot of people get hit in the face" and Judge's testimony that there have been "countless incidents" of inmate injuries are sufficient to show a pattern of correctional officers battering inmates, their testimony is still insufficient to show that Sorber knew about a pattern and a risk of constitutional injuries arising from his policies. *See* ECF No. 36-2 at 37; *id.* at 70; *Smith*, 2010 WL 4916075, at *4, *11 (recommending summary judgment in part because inmate depositions claiming a pattern of abuse did not assert that the warden knew about the pattern). Therefore, Mucci has failed to produce evidence showing that there is a genuine dispute of material fact regarding whether Sorber had a policy, practice, or custom that directly caused Mucci's injury.

### B.    Retaliation

Although Mucci only includes a supervisory liability claim against Sorber in his Complaint, Mucci raises a retaliation claim against Sorber for the first time in his opposition brief.[8] *See* ECF No. 36 at 10; ECF No. 35-1 at 35-36; ECF No. 36-2 at 21, 25. Mucci claims Sorber retaliated against him for either (1) allegedly threatening an officer, or (2) filing grievances against Waters. *See* ECF No. 35-1 at 36-37 (showing Mucci testified that he asked

---

[8] Mucci also mentions the Fourth and Eighth Amendment in his opposition brief in passing. *See* ECF No. 36 at 11 ("A jury could determine that multiple failures of his subordinates to follow prison policies (and his own by not referring Plaintiff's complaints of assault to the Security Office), when addressing the assault and battery . . . constituted 4th and 8th Amendment violations."). Mucci seems to be arguing that Sorber should be liable for his subordinate's alleged Fourth and Eighth Amendment violations, not that Sorber himself violated these amendments. *See id.* ("A jury could easily infer that Sorber . . . fail[ed] to train, discipline and supervise his subordinates . . ."). As discussed, Mucci has not produced evidence showing that Sorber can be liable for his subordinate's constitutional violations.

Sorber about his dental treatment and his placement on M Block, and that Sorber responded that Mucci should "never threaten one of [his] officers"); ECF No. 36-2 at 21-22 (same); ECF No. 36-2 at 25 (claiming Sorber retaliated against Mucci "after [Mucci] filed grievances against Waters").  Mucci asserts Sorber retaliated against him by denying him dental treatment and by placing him in a dangerous cell block.  *See* ECF No. 35-1 at 36-37; ECF No. 36-2 at 21-22; ECF No. 36-2 at 25 (showing Mucci testified that Sorber retaliated against him with "delayed medical treatment and [his] housing placement").

      To the extent that Mucci is trying to raise a new retaliation claim, the Court can decline to consider it because he failed to raise this claim in his Complaint.  *See Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008) (holding that a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment" (quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996), *abrogated by*, *Schmees v. HC1.COM, Inc.*, 77 F.4th 483 (7th Cir. 2023))).  District judges within the Third Circuit have continued to cite *Bell* with approval even after the Seventh Circuit abrogated *Shanahan*, the Seventh Circuit opinion that the Third Circuit cited in *Bell*.  *See, e.g.*, *Evans v. Sentry Wellhead*, 764 F. Supp. 3d 298, 307 n.1 (W.D. Pa. 2025) (declining to address claim that plaintiff raised for the first time in his brief in opposition to summary judgment because plaintiff "cannot raise a new claim in his brief that was not pled in his complaint" (citing *Bell*, 275 F. App'x at 160)).

      However, even if the Court considers the merits of Mucci's retaliation claim, it still fails because he has not produced evidence supporting it.  A prisoner must show the following three elements to establish a prima facie retaliation claim: (1) the prisoner's "conduct [leading] to the alleged retaliation was constitutionally protected," (2) the prisoner "suffered some 'adverse action' at the hands of the prison officials" that is "sufficient to deter a person of ordinary

firmness from exercising his [constitutional] rights" and (3) the prisoner's constitutionally protected conduct "was a substantial or motivating factor in the decision to discipline him." *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quotations omitted).[9]  For example, activities like filing grievances are "constitutionally protected."  *See, e.g.*, *Wilcox v. Martinez*, 858 F. App'x 477, 479 (3d Cir. 2021).  However, threatening an officer is not a protected activity.  *See Torres v. Clark*, 522 F. App'x 103, 104-05 (3d Cir. 2013) (finding inmate's statement that someone was "going to break" a correctional officer's jaw is not constitutionally protected because it was a "true threat" and therefore cannot be "the basis for a retaliation claim" (quotations omitted)); *Brown v. Hannah*, 850 F. Supp. 2d 471, 479 (M.D. Pa. 2012) (noting prisoner's retaliation claim "fails the first prong . . . because he does not establish any basis to show that he had a constitutionally protected right, in the prison setting, to use inappropriate, disrespectful and derogatory language" to a correctional officer).

  First, to the extent Mucci claims that Sorber retaliated against him for allegedly threatening a correctional officer, his claim fails on prong one because his claim would be based on unprotected conduct.  *See Torres*, 522 F. App'x at 104-05; *Brown*, 850 F. Supp. 2d at 479; ECF No. 35-1 at 36-37 (claiming Sorber implied that he denied Mucci "dental implants" and placed Mucci on M Block because Mucci "threaten[ed] one of [his] officers"); ECF No. 36-2 at 21-22 (same).  Second, to the extent Mucci claims that Sorber retaliated against him for filing a grievance against Waters, his claim also fails because the undisputed facts show that the adverse actions Mucci complains of occurred *before* he filed a grievance against Waters.  *See* ECF No. 36-2 at 25 (claiming Sorber retaliated against Mucci "after [Mucci] filed grievances against

---

[9] If the plaintiff establishes these three elements, then "[t]he burden . . . shift[s] to the defendant to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity."  *See Rauser*, 241 F.3d at 333.

Waters"). Waters allegedly punched Mucci on August 17, 2021. ECF No. 36-2 at 79-81. The record before the Court shows that Mucci's November 4, 2021 grievance appeal was the first time Mucci reported to Sorber that Waters intentionally hit him. *See* ECF No. 36-2 at 79-81; ECF No. 35-1 at 14-15, 33-34. The retaliatory conduct Mucci complains of—being denied dental treatment and being moved to M Block—all occurred before Mucci filed the November 4, 2021 grievance appeal with Sorber. *See* ECF No. 36-2 at 79-81 (showing a decision denying Mucci's grievance regarding his dental treatment was entered on November 1, 2021, before he filed the November 4, 2021 grievance claiming Waters punched him); ECF No. 35-1 at 32-33 (showing SCI Phoenix sent Mucci to M Block after he was released from the Restrictive Housing Unit, sometime around September 1, 2021).

Additionally, even though Mucci is no longer being housed on M Block, as of the date of his deposition—April 10, 2024—Mucci claims he is still "being housed on Q Block, which is the worst housing unit for level 4, level 5 inmates." ECF No. 35-1 at 38. Mucci does not explain how Sorber is responsible for his current housing placement, especially given that Sorber has been retired since October 2022. ECF No. 36-2 at 42-43. Mucci has thus failed to produce evidence supporting the third prong of his retaliation claim based on filing a grievance against Waters. *See Rauser*, 241 F.3d at 333 (noting the third requirement for a retaliation claim is showing that the protected conduct was a "'substantial or motivating factor' in the decision to discipline" the plaintiff (quotation omitted)).

## V. CONCLUSION

Mucci has failed to produce any evidence that a reasonable jury could use to find that Sorber is liable as a supervisor for Waters's alleged battery of Mucci or that Sorber retaliated against Mucci. Therefore, the Court will grant Sorber's motion for summary judgment.

An appropriate order follows.

                                                **BY THE COURT:**

                                                _____
                                                MARY KAY COSTELLO, J.